# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAAVO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1192-LPS-CJB |
| | ) | |
| COGNIZANT TECHNOLOGY | ) | |
| SOLUTIONS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| KAAVO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1193-LPS-CJB |
| | ) | |
| TIER 3, INC., APPFOG, INC. and SAVVIS | ) | |
| COMMUNICATIONS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Before the Court are motions to stay the proceedings in the instant patent infringement cases. The motions to stay were filed by Defendants Cognizant Technology Solutions Corp., Tier 3, Inc., Appfog, Inc., and Savvis Communications Corp. (collectively "Defendants"), (D.I. 15; D.I. 21, Civil Action No. 14-1193-LPS-CJB), and are opposed by Plaintiff Kaavo Inc. ("Plaintiff").[1] Defendants seek a stay pending resolution of motions filed pursuant to Federal Rule of Civil Procedure 12 (collectively, the "motions to dismiss"); the motions to dismiss assert that the patent-in-suit, United States Patent No. 8,271,974 (the "'974 patent"), is not directed to

---

[1] Citations herein are to the docket in Civil Action No. 14-1192-LPS-CJB unless otherwise noted.

patent-eligible subject matter under 35 U.S.C. § 101 ("Section 101"). (D.I. 14; D.I. 19, Civil Action No. 14-1193-LPS-CJB)[2] For the reasons set forth below, the motions to stay are GRANTED.

## I. STANDARD OF REVIEW

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60-61 (3d Cir. 1985). This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., FMC Corp. v. Summit Agro USA, LLC*, Civil Action No. 14-51-LPS, 2014 WL 3703629, at *2 (D. Del. July 21, 2014); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865-LPS, 2010 WL 5149351, at *1 (D. Del. Dec. 13, 2010).

## II. DISCUSSION

The Court, which has been referred these motions for resolution by Chief Judge Leonard P. Stark, (D.I. 6; D.I. 5, Civil Action No. 14-1193-LPS-CJB), will analyze the three stay factors in turn.

### A. Simplification of Issues for Trial

Defendants argue that the motions to dismiss, if "resolv[ed] in favor of Defendants will

---

[2] The proposed Scheduling Order submitted by the parties regards a consolidated schedule in the two cases listed above, as well as a third case: Civil Action No. 14-1191-LPS-CJB. (D.I. 27) The Defendant in that third case, BMC Software, Inc. has not filed a motion to dismiss nor a motion to stay and takes no position on whether Defendants' motions to stay should be granted. (D.I. 17, ex. 1 at 2 n.1)

2

resolve the entirety of Kaavo's case, eliminating the need for discovery at all, and avoiding the substantial costs and fees involved in that phase of the case." (D.I. 22 at 6, Civil Action No. 14-1193-LPS-CJB) The fact that the motion, if resolved a certain way, could be entirely case-dispositive as to all asserted claims of the one patent-in-suit (and thus, of the entire suit against all Defendants seeking a stay), is certainly a fact inuring to Defendants' benefit here.[3] *Cf. SenoRx v. Hologic, Inc.*, Civ. Action No. 12-173-LPS-CJB, 2013 WL 144255, at *3-4 (D. Del. Jan. 11, 2013) (in assessing the simplification factor as to a request for a stay in favor of *inter partes* reexamination, examining what percentage of the asserted claims are at issue in the reexamination proceeding). And there is no question that, as Defendants repeatedly note, the Court has the discretion to conclude that "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile." *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010); *see also Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014).

But in considering the prospects for simplification, our Court has assessed *all* of the possible outcomes of the proceeding or inquiry that the case would be stayed in favor of—not just the potential outcome most favorable to the party seeking the stay. *See SenoRx*, 2013 WL 144255, at *3 (considering how the case would be simplified if any of "three possible outcomes" of a reexamination proceeding occurred, and finding that "[w]hatever outcome occurs, there is the potential for the simplification of issues for trial") (citing *Abbott Diabetes Care, Inc. v.*

---

[3]   In contrast, a stay request would be far weaker as to the "simplification" factor were the request that the case be stayed pending resolution of a motion that was not dispositive as to all claims and all movants.

3

*DexCom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007)).[4] And here, while the cases would certainly be greatly simplified were the motions to dismiss ultimately to be granted as to all asserted claims (since the cases would all then end soon after), were the motions denied, little efficiency gain would be realized.[5]

---

[4] In doing so, our Court generally has not attempted to evaluate the legal merits of the proceeding or inquiry that the movant seeks a stay in favor of. *See Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, Civ. No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 506 (D. Del. 2012) (declining to comment on "the merit of Defendant's reexamination challenge"); *but see Neste Oil Oyj v. Dynamic Fuels, LLC*, Civil Action No. 12-662-GMS, 2013 WL 424754, at *4 (D. Del. Jan. 31, 2013) ("[T]he 'issue simplification' factor before the court turns largely upon the broader question of the merits of the reexamination request."). Similarly, here, the Court does not believe that its task is to predict the likely outcome of the motions to dismiss. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility LLC*, Civil Action No. 11-1305-LPS, 2012 WL 4321743, at *1-2 (D. Del. Sept. 20, 2012) (granting a motion to stay pending resolution of dispositive motions in related cases, without considering the merits of the dispositive motions); *cf. Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (finding, in weighing defendants' request for a stay of certain discovery pending decision on their summary judgment motions, that the Court should "decline[] to weigh in on the merits of defendants' motion" and that the stay request should not swing on a "prediction" of how the motion should be decided). Instead, its job is to take known factors (e.g., the scope of the motion as it relates to the claims and issues in the cases) and assess how they might weigh in favor or against simplification. *See, e.g., Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, Civ. No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) (examining the potential simplification of the case following reexamination in light of the scope of the issues and the number of claims that may remain); *cf. VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313, 1320 (Fed. Cir. 2014) (reversing denial of stay pending covered business method patent review, and holding that the district court erred by basing its determination of the simplification factor on a substantive examination of the merits of the review, albeit in part because such an examination was found to be contrary to Congress' intent).

[5] A third option is possible—the motions to dismiss could ultimately be denied without prejudice if, for example, the Court determines that claim construction proceedings should be held before a final decision is made on the motions, or that issues of fact exist as to the motions that require further development through discovery. *See, e.g., Data Distrib. Techs. LLC v. BRER Affiliates, Inc.*, Civil No. 12-4878 (JBS/KMW), 2014 WL 4162765, at *8 (D.N.J. Aug. 19, 2014) (denying without prejudice a Section 101 motion at the pleading stage and reserving a decision until after *Markman*, where, *inter alia*, the patent-in-suit contained 100 claims, the plaintiff failed to propose relevant claim constructions and the parties did not agree as to the

In assessing this factor, our Court has also examined to what degree there was overlap between the legal issues involved in the instant case, as compared to the issues to be litigated in the proceeding/inquiry that the case would be stayed in favor of. In the context of a stay in favor of an *inter partes* reexamination or review proceeding—a proceeding that might well encompass a significant number of the claims and defenses that would be at issue in the district court litigation (e.g., defenses pursued under 35 U.S.C. §§ 102 & 103)—it could be that what occurs at the United States Patent and Trademark Office ("PTO") would impact a significant percentage of the legal issues at play in the district court case. *See, e.g., SenoRx*, 2013 WL 144255, at *4. Analogizing that inquiry to the situation here, a stay of the district court case in favor of resolution of any one motion is not going to fare as well in the "simplification" analysis. The motions to dismiss here involve a Section 101 defense—an important legal issue to be sure, but only one of the many claims and defenses that are at issue in the cases. If those motions are *not* resolved entirely in Defendants' favor, and the cases must go on, then the majority of the legal issues relevant to the case will still be pending and unaddressed. *Cf. Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 507 (D. Del. 2012) (noting, in light of the fact that many issues in the district court case would not be raised in an *inter partes* reexamination proceeding, that "if some or all of the claims emerge from reexamination, a not insignificant portion of the case will remain unilluminated by the PTO's review"). In that scenario, a stay would not have

---

meaning of key claim terms). In either of these scenarios, the cases would have been stayed (with no progress made regarding initial disclosures or other discovery) only to likely restart again with the Section 101 issues still pending.

5

simplified the case much at all.[6]

In the end, the prospect of simplification if a stay is granted is very real, but in light of the other factors set out above, the Court does not think it weighs as strongly in favor of Defendants as Defendants assert that it does. Instead, the Court believes that, taking into account all of the issues discussed above, this factor weighs slightly in favor of a stay.

### B.     Status of Litigation

There is no question that these cases are in their very early stages. A Case Management Conference has been held, but no Scheduling Order has yet been entered and discovery has not yet begun. With the Court and the parties having invested relatively few resources in the cases since their filing, this factor strongly favors a stay. *See, e.g., Ever Win*, 902 F. Supp. 2d at 507-08 (coming to the same conclusion, where the case was "in its very early stages" as "[n]o initial disclosures have been exchanged, no Scheduling Order has been entered [and] no discovery has occurred").

### C.     Undue Prejudice

Much of the parties' discussion as to this final stay factor was focused on assessing the

---

[6]     The Court is also impacted here by Chief Judge Stark's recently issued "Revised Procedures for Managing Patent Cases." *See* Honorable Leonard P. Stark, Revised Procedures for Managing Patent Cases (June 18, 2014), *available at* http://www.ded.uscourts.gov/judge/chief-judge-leonard-p-stark (follow "New Patent Procedures" tab; then download "Patent Procedures" document). In that document, Chief Judge Stark notes that "[g]enerally, we will not defer the [Case Management Conference] and scheduling process due to the pendency of" a motion to dismiss, transfer or stay. *Id.* at 6. While this procedure certainly leaves plenty of room for the Court to stay discovery and defer entry of a schedule if a case-dispositive motion to dismiss is pending, the Court reads it as expressing the District Court's preference that, in the main, cases should move forward—even in the face of a yet-to-be-resolved motion to dismiss. *See Kraft Foods Grp. Brands LLC v. TC Heartland LLC*, Civil Action No. 14-28, D.I. 32 (D. Del. Jan. 7, 2015) (oral order denying defendants' request to stay entry of a scheduling order due to a pending motion to dismiss).

relationship of the parties, which typically involves considering whether the parties are direct competitors. *See, e.g., SenoRx*, 2013 WL 144255, at *7; *Cooper Notification*, 2010 WL 5149351, at *5; *Belden Technologies Inc. v. Superior Essex Commc'ns LP*, Civ. No. 08-63-SLR, 2010 WL 3522327, at *3 (D. Del. Sept. 2, 2010). This subfactor is often a very important one in the stay calculus. Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill. *See, e.g., Nexans Inc. v. Belden Inc.*, C.A. No. 12-1491-SLR-SRF, 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014); *SenoRx*, 2013 WL 144255, at *7 (citing *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, No. 2:12-cv-00840, 2012 WL 3527938, at *2-3 (W.D. Wash. Aug. 14, 2012)). Even in cases where there are a fair number of other competitors in the market, so long as plaintiff and defendant were joint market participants and engaged in some demonstrated level of competition, our Court has tended to find that some amount of potential undue prejudice was at play.[7] Alternatively, where there is no evidence of

---

[7] *See, e.g., FMC Corp.*, 2014 WL 3703629, at *6 (finding the undue prejudice factor to weigh slightly in favor of the non-movant plaintiff, where the evidence suggested that the plaintiff and defendant competed in the relevant market, but that the market involved between 10 and 15 total competitors); *Helicos Biosciences Corp. v. Pacific Biosciences of Cal.*, Civ. No. 10-735-SLR, 2011 WL 6299761, at *3 n.9 (D. Del. Dec. 16, 2011) (declining to make definitive findings on the issue of competition, but determining that plaintiff's status as a "market participant" with defendant was sufficient for the factor to disfavor a stay); *Cooper Notification*, 2010 WL 5149351, at *5 (finding the factor to disfavor a stay when the parties directly competed in a "small percentage of their transactions[.]"); *cf. Nexans, Inc.*, 2014 WL 651913 at *3 & n.3 (finding that because defendants had failed to show that "the parties are the only two participants in the relevant market[,]" and had shown only that they were mere "'market participants[,]'" this factor did "not weigh substantially in favor of a stay"); *Neste Oil OYJ v. Dynamic Fuels, LLC*, Civil Action No. 12-1744-GMS, 2013 WL 3353984, at *3-4 (D. Del. July 2, 2013) (finding the undue prejudice factor not to weigh in plaintiff's favor, but where there were "many hundreds" of fellow competitors in the relevant market along with plaintiff and defendant) (internal quotation

7

direct competition at all beyond attorney argument, this subfactor does not support denial of a stay. *Ever Win*, 902 F. Supp. 2d at 510.

Here, the record is very sparse on the competition issue. Plaintiff claims that it is a "practicing entity in direct competition" with Defendants "in the marketplace for cloud computing network services[.]" (D.I. 19 at 3-4) For their part, Defendants disagree, and note that the "cloud computing market" contains an "innumerable number of businesses[.]" (D.I. 20 at 6). But neither party supplemented the record with evidence on this issue when filing briefing on the motions to stay. (*See* D.I. 19 at 3 (Plaintiff's brief citing no record support for the allegation that the parties are competitors); D.I. 20 at 3 (Defendants' brief offering no citation for their assertions regarding the nature of the cloud computing market)) Plaintiff did attach some purportedly relevant exhibits to a filing made in advance of a recent Case Management Conference (at which the stay issue was to be argued), but Plaintiff failed to meaningfully explain the exhibits' relevance in their filing. (D.I. 25 at 1 & exs. 2-6) At a general level, the exhibits (printouts from Plaintiff's and Defendants' websites) appear to show that Plaintiff and at least two Defendants offer cloud computing network services of some kind. (*See* D.I. 25, ex. 2 at 3 ("Kaavo's software solve[s] the challenge of deploying and managing distributed applications, workloads, and IT environments in the clouds."); D.I. 25, ex. 3 at 5 ("Cognizant's Cloud Application Services help you move to the cloud . . . ."); D.I. 25, ex. 5 at 8 ("AppFog [is] committed to meeting the needs of our customers for public cloud . . . deployments").[8] But as to

marks and citation omitted).

[8] The remaining documents submitted by Plaintiff, exhibits 4 and 6, relate to a product or service called "CenturyLink Cloud[,]" an "all-in-one cloud platform that delivers high-performance, secure, reliable and scalable cloud solutions for all workloads[.]" (D.I. 25, ex.

8

whether Plaintiff and Defendants' products actually do similar things, or whether Plaintiff and any Defendant have ever competed for the same or similar customers in this very broadly-articulated market, there is little guidance in the record.[9] And so, at best, this subfactor weighs only slightly against the grant of the motions to stay.

The parties make a few other arguments regarding the "undue prejudice" factor. For example, Defendants argue that there will be only a "short delay" while the motions to dismiss are resolved, and thus, this is likely to implicate little prejudice to Plaintiff. (D.I. 22 at 7, Civil Action No. 14-1193-LPS-CJB) Yet oral argument on the motions has been requested, (D.I. 22), and in light of the considerable docket of this Court, the delay in resolving the motions to dismiss could be significant. While the potential for delay alone "'does not, by itself, amount to undue

---

6 at 4; *see id.*, ex. 4 at 1 (same)) But Plaintiff offered no explanation of how the CenturyLink Cloud offering relates to any of the individual Defendants. (D.I. 25 at 1-2) It appears from the Second Amended Complaint in Civil Action No. 14-1193-LPS-CJB that Plaintiff alleges that CenturyLink Cloud is one of certain Defendants' "methods and systems for management of a cloud computing environment[,]" (D.I. 18 at ¶¶ 23, 31, Civil Action No. 14-1193-LPS-CJB), but Plaintiff has not cited to anything in the record that describes which Defendant's product CenturyLink Cloud is. (*Cf.* D.I. 28 at 9 (Defendants assert that each of the three Defendants in the 14-1193-LPS-CJB action (Tier 3, Inc., Appfog, Inc., and Savvis Communications Corp.) offer "separate systems[.]"))

[9]     As to other indicia of direct competition, if the non-movant files a motion seeking a preliminary injunction, that can be a hint that it competes with the movant (though the failure to seek a preliminary injunction is in no way dispositive as to this subfactor). *SenoRx*, 2013 WL 144255, at *8 (citing cases). Here, though it did seek injunctive relief in its Complaints, (*see, e.g.*, D.I. 1 at 3-4), Plaintiff has not moved for a preliminary injunction (it asserts that without discovery it lacks a factual basis upon which to seek a such an injunction). (D.I. 28 at 21-23) It is also worth noting that Plaintiff waited nearly two years between the time that the patent issued and the time that it filed suit against these Defendants. (D.I. 28 at 13; D.I. 1 (filed September 15, 2014); '974 patent (issued September 18, 2012)); *cf. VirtualAgility Inc.*, 759 F.3d at 1319 (holding that a one-year delay in filing suit after the patent was issued weighed against patentee's claims that it would be unduly prejudiced by a stay due to its alleged competition with defendant).

9

prejudice[,]'" *Ever Win*, 902 F. Supp. 2d at 509 (quoting *Wall Corp. v. BondDesk Grp.*, LLC, C.A. No. 07-844 GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009)), it is a subfactor the Court can consider. The likelihood of a delay favors Plaintiff's position.

Defendants also assert, (D.I. 28 at 32-33), that the timing of the stay request does not suggest that Defendants are seeking an inappropriate tactical advantage—a subfactor that, if present in the case, would weigh against a stay. *Cf. Belden Techs.*, 2010 WL 3522327 at *2 (noting that a "request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an *inappropriate* tactical advantage.") (emphasis added). The Court agrees. Defendants have filed this motion early in the case, at a time that does not suggest inappropriate gamesmanship.[10]

In light of the potential for some significant delay if the motions to stay are granted, and with some (albeit limited) indication that Plaintiff and Defendants are a part of a large (though

---

[10] Our Court at times has explicitly considered whether the *moving party* would face undue hardship or inequity in the absence of a stay. It has explained that such an inquiry should be a part of the Court's analysis of the "prejudice" factor of the three-factor balancing test used in examining motions to stay, if there is "even a fair possibility that the stay . . . will work damage to [another party]." *SenoRx*, 2013 WL 144255, at *9 n.12 (internal quotation marks and citations omitted); *see also Cooper Notification*, 2010 WL 5149351, at *2. Defendants assert that they would face prejudice were the motions to stay denied, in the form of added "costs" they would incur, were they forced to begin discovery while the motions to dismiss are pending. (D.I. 22 at 7, Civil Action No. 14-1193-LPS-CJB; D.I. 20 at 10) This type of economic harm, however, has been deemed not to amount to the kind of "undue" hardship or inequity referenced in the case law. *See Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) (noting that the moving party had made no such showing of clear hardship or inequity when the only prejudice it argued it would incur in proceeding with the litigation was added litigation cost); *Cooper Notification*, 2010 WL 5149351, at *2 n.1 (same). While demonstrating that it would face undue hardship or prejudice in the absence of a stay can be beneficial to the moving party in the stay calculus, the moving party is not required to put forward such evidence in order have its motion granted. *Cooper Notification*, 2010 WL 5149351, at *2.

10

very ill-defined) market, the Court is prepared to say only that this factor weighs slightly against a stay.

## III. CONCLUSION

On balance, the possibility of simplification of the issues weighs slightly in favor of a stay, and the status of the litigation weights strongly in favor of a stay. The undue prejudice factor weighs slightly against a stay. Had Plaintiff made a stronger showing that the parties are direct competitors, the Court's overall conclusion here may have differed. But in the end, the possibility of dramatically simplifying the case, and of realizing such simplification at a very early stage, is compelling enough to warrant grant of Defendants' motions. For the foregoing reasons, the motions to stay are GRANTED.

Dated: April 9, 2015

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE