IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAAVO INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 1:14-cv-1192-LPS-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION | ) |
| | ) |
| Defendant. | ) |
| KAAVO INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 1:14-cv-1193-LPS-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TIER 3, INC., APPFOG, INC. AND SAVVIS COMMUNICATIONS CORPORATION | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND <u>RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Kaavo, Inc.*

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. STANDARD OF REVIEW ....................................................................................................1

III. ARGUMENT ..........................................................................................................................1

    A. Defendants Failed to Overcome the Burden of Persuasion Regarding the Presumption of Validity................................................................................1

    B. The Report Misapplied the Standards for a Rule 12(b)(b) Motion..............................3

    C. The Claims of the '974 Patent Are Not Directed to an Abstract Idea..........................4

    D. Claims 1, 13, 24 and 35 of the '974 Patent Include an Inventive Concept .......................................................................................................................7

IV. CONCLUSION .....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ................................................. passim

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ............................................................................................ 8

*Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331 (Fed. Cir. 2015) ......................................................... 3

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013) (*en banc*) ............................ 2

*Cronos Tech., LLC v. Expedia, Inc.*, 2015 WL 5234040 (D. Del. Sept. 8, 2015) ................................ 3

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012) ............................ 6, 7

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012) ............ 2, 6, 8

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011) ................................... 1, 2

*Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545
    RMW, 2012 WL 967968 (N.D. Cal. Mar. 21, 2012) ...................................................................... 8

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ................................................................................. 9

**Statutes**

28 U.S.C. § 636 ................................................................................................................................... 1

35 U.S.C. § 101 ..................................................................................................................... 1, 2, 6, 8

35 U.S.C. § 102 ................................................................................................................................... 2

35 U.S.C. § 103 ................................................................................................................................... 2

35 U.S.C. § 112 ................................................................................................................................... 2

35 U.S.C. § 251 ................................................................................................................................... 2

**Rules**

FED. R. CIV. P. 12 ............................................................................................................................ 3, 4

FED. R. CIV. P. 72 ............................................................................................................................... 1

I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiff hereby objects to the Report and Recommendation of Judge Burke, dated February 5, 2016 (hereinafter "the Report"), which should be rejected for the reasons stated below.

II.   STANDARD OF REVIEW

In examining the Report, the Court "shall make a *de novo* determination of those portions of the report or the specified proposed findings or recommendations to which an objection is made." 28 U.S.C. § 636(b)(1)(c); *see also* FED. R. CIV. P. 72(b)(3).

III.   ARGUMENT

A.   Defendants Failed to Overcome the Burden of Persuasion Regarding the Presumption of Validity

The Report spends a great deal of verbiage discussing whether the clear and convincing burden *of proof* applies to § 101 challenges discussing, among other things, the disagreement among Federal Circuit judges expressed by Judges Mayer and Rader in concurrences. (D.I. 35 at 6.[1]) The Report, however, is entirely silent on the *presumption* of validity and the burden *of production*. While not addressed in the Supreme Court's opinion in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the question of whether the statutory presumption of validity applies to § 101 challenges was squarely before the Federal Circuit *en banc* and all nine judges that addressed the question unanimously agreed it does[2]:

> [I]t bears remembering that all issued patent claims receive a statutory presumption of validity. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011). And, as with obviousness and enablement, ***that presumption applies when § 101 is raised as a basis for invalidity in district court proceedings***

---

[1]   The Report and Recommendation found at C.A. No. 1:14-cv-1192, D.I. 35 and C.A. No. 1:14-cv-1193, D.I. 42 is identical. It will be cited to herein as "D.I. 35."

[2]   Judge Newman in her separate opinion concurring in part and dissenting in part did not directly address the question. *CLS Bank*, 717 F.3d at 1321-27.

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1284 (Fed. Cir. 2013) (*en banc*) (J. Lourie, concurring, joined by J. Dyk, Prost, Reyna and Wallach) (emphasis added).

> [W]e turn to CLS Bank's contention that the presumption of validity should not apply to patent eligibility challenges. CLS Bank contends that the presumption of validity only applies to *statutory* bases for invalidating a patent—35 U.S.C. Sections 102, 103, 112, and 251. Thus, although the Supreme Court invalidated the patent before it in *Prometheus* because it fell within one of the exceptions to patent eligibility—the law of nature exception—**CLS Bank contends that the Section 101 inquiry does not involve the presumption of validity in the same way the statutory bases for invalidity do. We disagree.**

*Id*. at 1304 (J. Rader, concurring-in-part, dissenting-in-part, joined by J. Linn, Moore and O'Malley)[3] (emphasis added).  Because the claims of the '974 patent, like all issued claims, carry a presumption of validity, it was the Defendants' burden of production – irrespective of what burden of proof is applied – to rebut that presumption.

The Report, as a whole, makes clear that Defendants' failed to rebut the presumption of validity with respect to any issued claim of the '974 patent.  As the Report recognized, Defendants' analysis of *Alice* step 1 was highly flawed, "overly simplistic" and "stray[ed] too far from the actual wording of the claim."  (D.I. 35 at 12 n.7.)  Further, the Report recognized "[t]he claims (and indeed, the patent) are all about cloud computing environments and ways of managing cloud computing environments."  (*Id*.)  Yet the Defendants' arguments regarding *Alice* step 1 that the multiple recitations to "cloud" within each and every independent claim had no meaning and that

---

[3] Notably, the same four-judge opinion found the clear-and-convincing burden of proof applies to § 101 challenges.  *CLS Bank*, 717 F.3d at 1304-05 ("Because we believe the presumption of validity applies to all challenges to patentability, including those under Section 101 and the exceptions thereto, we find that any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence.  *Cf. Microsoft*, 131 S.Ct. at 2242 ('We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.').").  While these objections do not rely on the clear-and-convincing burden of proof applying, Plaintiff does not concede that it does not apply.

the claims were not even restricted to computing. (C.A. 1:14-cv-1192, D.I. 14 at 3-5; C.A. 1:14-cv-1193, D.I. 20 at 7-9.) Defendants' analysis of *Alice* step 2 compounded those errors, again completely ignoring the numerous limitations regarding the cloud, and indeed, Defendants' step 2 arguments were so anemic they merited no more discussion in the Report than a single "*see also*" cite to a conclusory statement based on a flawed identification of the alleged abstract idea. (D.I. 35 at 19.) That should have ended the inquiry. Defendants "failed to address the concepts embodied in [any] claim [] *as a whole*" and instead "engaged in a piecemeal analysis of the individual limitations" while ignoring substantive claim language, which alone required denial of their motions. *Cronos Tech., LLC v. Expedia, Inc.*, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015).

Having found the Defendants' argument lacking, as described further below, the Report went on to formulate its own alleged abstract idea (D.I. 35 at 13), its own characterization of the "basic character" of the claims (*id*. at 14 n.9), and draw its own conclusion regarding what is or what is not "wholly generic computer technology" (*id*. at 21 n.12), untethered to any arguments made by the Defendants (and therefore without a fair opportunity for rebuttal by Plaintiff). In essence, the Report required the Plaintiff to prove that the claims were valid. This was a clear error of law, because "'[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.'" *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1337 (Fed. Cir. 2015) ("The court erred in shifting the burden of production to disprove invalidity.")" This error alone requires rejection of the Report.

**B.    The Report Misapplied the Standards for a Rule 12(b)(b) Motion**

The Report acknowledges that, in the context of Rule 12(b)(6), factual matter in the complaint must be "accepted as true" and that the inquiry is whether there is "any reasonable reading of the complaint" under which "the plaintiff may be entitled to relief." (D.I. 35 at 5.) Rather than viewing Plaintiff's complaint through this lens, however, the Report engaged in an

3

improper weighing of the complaint's factual allegations in two important respects.

First, as to inventive concept, Plaintiff described in paragraph 15 of the Second Amended Complaint (C.A. No. 1:14-cv-1193, D.I. 18), the specific, factual ways in which the invention of the '974 patent improves the functioning of a computer system. The Supreme Court in *Alice* recognized improvements to the computer as a hallmark of patent-eligible inventions. *Alice*, 134 S. Ct. at 2359. Accordingly, this allegations of paragraph 15 (and the supporting allegations in paragraphs 16 and 17) should have been taken as true, ending the inquiry under Rule 12(b)(6).

Second, as to preemption, Plaintiff described in paragraph 17 the specific, factual way in which the claims of the '974 patent do not preempt setting up and managing a computer environment. The Report, however, engaged in a weighing of the strength of plaintiff's factual allegations ("The Court is not persuaded that Plaintiff's reference in the SAC . . . warrants denial of Defendants' Motions"). Not only does the Report's analysis reverse the burden of production, it does not align with the inquiry of whether there is "any reasonable reading of the complaint" under which "the plaintiff may be entitled to relief." This, too, should have ended the inquiry under Rule 12(b)(6).

### C. The Claims of the '974 Patent Are Not Directed to an Abstract Idea

The Report found that claims 1, 13, 24 and 35 were all directed to the abstract idea of "setting up and managing a cloud computing environment." (D.I. 35 at 13.) This alleged abstract idea was not proposed by any of the Defendants (or Plaintiff). (*Id*. at 12.) Instead, the Defendants posited multiple different versions of the abstract idea to which the claims were allegedly directed (*id*.) and argued at the hearing that the "narrowest reading of the abstract idea" should not include any reference to cloud computing.[4] (C.A. No. 1:14-cv-1192, D.I. 34 ("Tr.") at 8:2-20.[5]) The

---

[4] *Cf. Cronos*, 2015 WL 5234040, at *3 (finding that the fact that defendants "propose at least four different versions of the abstract idea to which the challenged claims are purportedly directed"

4

Report, however, found all of the Defendants' varied identifications of an alleged abstract idea wanting because they were "overly simplistic" and "stray[ed] too far from the actual wording of the claim." (D.I. 35 at 12 n.7.)

The Report dismissed out of hand Plaintiff's arguments on step 1 of *Alice* because they were not responsive to the Report's new formulation of the alleged abstract idea found in the Report, but instead responded to the actual arguments made by the Defendants that the Court had already rejected. (*Id.* at 15-17.) However, the Report's own analysis of step 1 of *Alice* – which was based on the Court's own "belie[fs]" and did not rely on Defendants' arguments in any way – amounted to little more than a conclusory footnote:

> The language of the claim manifests what the Court believes to be the claim's "basic character." The claim is infused with broad, functional language that describes a process by which a cloud computing environment is initiated, monitored and adjusted. This is seen in the description of the process of determining an initial cloud computing environment based on user specifications (step 1), establishing that environment with the desired functionality (steps 2 and 3), and subsequently monitoring the environment in order to make beneficial changes (steps 4-6).

(D.I. 35 at 14 n.9.)

The Report's footnote, however, suffers from the same flaws that the Report recognized in the Defendants' arguments it rejected; namely it is "overly simplistic" and "stray[s] too far from the actual wording of the claim." (*Id.* at 12 n.7.) For example, the Report's characterization of step 1 of claim 1 as "determining an initial cloud environment based on user specifications" (*id.* at 14 n.9) ignores substantive language in that step requiring that "the requested initial cloud environment is not yet instantiated and is an N-tier computing environment." (Exh. A, '974 patent, at 18:47-49.[6]) The additional language that the Report ignored is not mere surplusage. Creating a new, specialized cloud environment for use by a software application based on the user-defined provisioning

---

supports denial of a motion to dismiss).
[5] C.A. No. 1:14-cv-1192, D.I. 34 and C.A. No. 1:14-cv-1193, D.I. 41 are identical.
[6] Exhibits cited herein are attached hereto.

information is a unique feature of the '974 patent.  As explained during a discussion of the specification at the hearing, "what I'm going through is how the patent deals with managing the cloud and setting up what you can consider a mini-cloud for the application to run."[7]  (Tr. at 53:13-16.)  The Report's characterization of this step, on the other hand, would cover a user joining a pre-existing cloud environment that happens to satisfy the user's specifications – a scenario that is explicitly excluded by the claim language.

Similarly, the Report lumped steps 2 and 3 of claim 1 together and described them as "establishing that environment with the desired functionality."  (D.I. 35 at 14 n.9.)  Once again, however, this is overly simplistic and ignores both the express language of the claim and its import.  For example, step 3 requires "sending application data that is configured to cause the application to begin execution in the initial cloud environment configuration."  ('974 patent at 18:54-56.)  The Report's simplification effectively ignores this step and would cover a user simply accessing and running application software that was pre-existing in the cloud without sending any "application data."  Again, the Report's characterization is broadening the claim to cover concepts explicitly excluded by the claim language.

As Judge Robinson previously warned, even before the Supreme Court's guidance in *Alice*:

> ***It is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception to patent eligibility under 35 U.S.C. § 101***.  Patent eligibility must be evaluated based on what the claims recite, not merely on the ideas upon which they are premised.

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 716 (D. Del. 2012) (emphasis added); *see also Alice*, 134 S. Ct. at 2361 n.3 (("Because the approach we made explicit in *Mayo* [*Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012),] considers all

---

[7] Notably, during the hearing, the Court cut short a discussion of the specification designed to provide the context necessary to understand the significance of this point.  (Tr. at 52:9-54:14.)

claim elements, both individually and in combination, it is consistent with the general rule that patent claims must be considered as a whole." (internal quotation marks omitted)). Because both the Report and the Defendants' engaged in exactly the type of "overly simplistic generalities" in identifying the alleged abstract idea prohibited by *CyberPhone* and *Alice*, the Report must be rejected.

D.   Claims 1, 13, 24 and 35 of the '974 Patent Include an Inventive Concept

To the extent the Court agrees that claims 1, 13, 24 and 35 are directed to the abstract idea of "setting up and managing a cloud environment," the additional elements discussed above each provide an inventive concept satisfying *Alice* step 2.

Claim 1, in language never addressed by either the Defendants or the Report, requires that "the requested cloud environment is not yet instantiated." ('974 patent at 18:47-49.) While "setting up" a cloud environment may be routine and/or conventional for cloud providers themselves based on their own information and protocols, claim 1 requires that a cloud environment that did not previously exist is instantiated based on user-defined provisioning information. (*Id.*) Referring to Figure 1, the Report in essence expanded the claim to cover the setting up and managing of the generic "cloud environment 100," and ignored the newly-created "application cloud environment configuration 110"" that is the heart of the invention. (*See, e.g.,* '974 patent at FIG. 1, 5:3-21.) There is no evidence or even an allegation that such a new creation was conventional or routine in cloud computing. (Tr. at 53:13-16.)

Similarly, unaddressed step 3 of claim 1 includes the inventive concept of "sending application data that is configured to cause the application to begin execution in the initial cloud environment configuration." ('974 Patent at 18:54-56.) As explained in the preamble of claim 1, throughout the specification and at the hearing, the "application data" refers to the "software application" that uses the cloud computing environment. (*See, e.g.,* '974 patent at Abstract, 1:8-11,

7

1:33-45, 4:54-56, 18:44-45; Tr. 42:6-13.) The term "application data" is a term of art known to those of ordinary skill and detailed examples are provided in the specification:

> Application data 220 may include, for example, specification/configuration data for the application, or the computer-usable code of the application.

('974 patent at 7:40-42.) There is no evidence or even an allegation that the sending of such "application data" from the user was conventional or routine in cloud computing.

### E. The Prosecution History Shows Inventive Concepts

The Report suggests that Plaintiff did not provide adequate "basis to deny the Defendants' Motions as to the 'prior art' argument" regarding preemption. (D.I. 35 at 28.) First, as explained in Section III.A. above, it is not Plaintiff's burden to provide a basis to deny, it is Defendants' burden to provide a basis to grant, which they utterly failed to do. 35 U.S.C. § 282; *see also Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 967968, at *3 (N.D. Cal. Mar. 21, 2012) ("[Defendants] must demonstrate that the claims fall within one of the exceptions to '§ 101's broad patent eligibility principles,' [*Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010)].") Second, as explained in *Alice*, the issue of preemption is intimately tied to the identification of the abstract idea that represents a building block of human ingenuity:

> In applying the § 101 exception, we must distinguish between patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, Mayo 566 U.S., at ___, 132 S. Ct. at 1303, thereby "transform[ing]" them into a patent-eligible invention, id., at ___, 132 S. Ct. at 1294. . . . ***The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.***

*Alice*, 134 S. Ct. at 2354-55 (emphasis added).

With respect to the "narrowest" alleged abstract idea identified by Defendants (Tr. at 8:2-20), Plaintiff's response at the hearing was absolutely correct – "there's not one specific one to refer you to." (Tr. at 78:5-23.) That is because even under Defendants' "narrowest" abstract idea, every single piece of prior art cited on the face of the patent embodied that abstract idea, was available for

the world to use and not pre-empted. (C.A. No. 1:14-cv-1192, D.I. 18 at 2, 7-8, 7 n.4.) While the Report was not satisfied with Plaintiff's response, that is not surprising, because the alleged abstract concept and "basic character" of the claim to which the Report wanted response had not yet been formulated or expressed. Those first appeared in the Report, not in any Defendants' argument prior to or at the hearing. However, as the issues were framed in the Report, the prosecution history contains facts that are directly relevant and as explained in the accompanying certification, good cause and fundamental fairness dictate that the Court consider this evidence.[8]

As noted above, the Report's analysis in *Alice* step 1 ignored the claim limitation that in the "determining . . ." step of claim 1, the "the requested initial cloud environment is not yet instantiated." ('974 patent at 18:46-49; D.I. 35 at 14 n.9.) This limitation, however, was a substantive limitation that was relied upon by the examiner during prosecution of the '974 patent. As explained by the applicant and "as agreed by Examiner Dao in a May 7, 2012 email exchange" the limitation "that the recited requested initial cloud environment 'is not yet instantiated,'" differentiated the claims from the prior art ("Mason"), which by contrast had an existing cloud that the device "requests to join." (Exh. B, Response to February 6, 2012 Office Action, at 17.) As recognized by the examiner, instantiating a new, previously non-existent cloud to a user's specification is an inventive concept, unknown in the prior art. There is nothing in the record, Defendants' conclusory arguments or the Report that even suggests such an inventive concept was conventional or generally known.

Similarly, the Report over-simplified steps 2 and 3 of claim 1, entirely ignoring step 3: "sending application data that is configured to cause the application to begin execution in the initial

---

[8] The prosecution history is matter of public record that is judicially noticeable. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (matters of public record, such as records of a government agency, may be judicially noticed in a motion to dismiss).

cloud environment configuration." ('974 patent at 18:54-56; D.I 35 at 14 n.9). The Report's simplification of steps 2 and 3 of claim 1 to "establishing that environment with the desired functionality" would certainly cover "adding the [user] device to a map of the cloud that [the user] device has been permitted to join" and "providing parameters to [the user] device [] that govern the device's participation in the cloud," but as the prosecution history explains, neither "qualifies as sending application data that is configured to cause an application to begin execution in the initial cloud configuration." (Exh. B at 17; *see also* Exh. C, Response to February 24, 2011 Final Office Action, at 18-20 (distinguishing "Steinhans" reference as not sending application data.) Indeed, it was simply "not possible for application data to be sent" to the cloud of the prior art discussed during prosecution. (Exh. B at 17.) Again, there is nothing in the record, Defendants' conclusory arguments or the Report that even suggests sending such application data to the cloud was conventional or generally known.

The prosecution history evidence presented here is directly responsive to new arguments *not* present in Defendants' briefs, but instead introduced in the Report. Good cause and fundamental fairness dictates that this evidence be considered and the Report rejected. *See Cronos*, 2015 WL 5234040, at *2 (motion to dismiss should be denied without prejudice if there are "*any* set of facts that could be proven relating to preemption . . . that would result in a determination that one—or more a patent eligible.").

### IV. CONCLUSION

For the foregoing reasons, the Report and Recommendation should be rejected and Defendants' Motions should be denied.

Dated: February 22, 2016	STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Kaavo, Inc.*

## CERTIFICATION

Plaintiff's Objections include newly-presented particularized evidence regarding the lack of preemption from the prosecution history of the '974 patent. More specifically, Exhibit B is a true and correct copy of Response to February 6, 2012 Office Action filed in U.S. Serial No. 12/247,654 at the U.S. Patent and Trademark Office and Exhibit C is a true and correct copy of Response to February 24, 2011 Final Office Action filed in U.S. Serial No. 12/247,654 at the U.S. Patent and Trademark Office. Good cause exists for considering this evidence. The question of preemption is intimately and directly tied to the identification of the alleged abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354-55 (2014). The abstract idea relied upon by the Report and Recommendation (the "Report") was not included in any Defendants' argument. Instead, Defendants' "narrowest" abstract idea was substantially broader than what the Report relied upon. This particularized evidence was not needed to rebut Defendants' varied proposed abstract ideas, but is directly responsive to the new abstract idea and alleged "basic character" of the claims expressed for the first time in the Report, and good cause and fundamental fairness dictates that the Court consider this evidence.

Plaintiff does not believe that the remainder of the objections contain new evidence or arguments, but instead can be properly characterized as "explain[ing its] view of the Magistrate Judge's determinations and analysis." *Masimo Corp. v. Philips Electronic N. Am. Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014). To the extent the Court disagrees and finds any arguments new, good cause exists for any new arguments because they respond to the Report which relies on an abstract idea and basic character of the claims that is fundamentally different than contained in any defendant brief or argument at the hearing.

Dated:  February 22, 2016                    STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Kaavo, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2016, I electronically filed the above document(s) with the Clerk of Court using CM/ECF, which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080